```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION
```

MANORS OF INNISBROOK            *
CONDOMINIUM ASSOCIATION, INC.,
                                *
    Plaintiff,
                                *
vs.                                         CASE NO. 4:22-cv-40 (CDL)
                                *
HOME-OWNERS INSURANCE COMPANY,
                                *
    Defendant.
                                *

## O R D E R

The Georgia legislature could provide that if an insurance company breaches an insurance contract by not paying its insured what is due under that contract, then to make the insured fully whole the insurance company should be required to pay the insured's expenses of having to litigate the claim. The legislature also in order to deter insurance companies from denying claims that should be paid, could arguably impose a monetary penalty upon insurance companies when they breach their insurance contracts. The Georgia legislature has done neither. Instead, it has determined that such litigation expenses and penalties should only be imposed when an insurance company refuses to pay a claim in bad faith. And a finding of bad faith requires more than a showing that the insurance company owed the claim. Because a genuine dispute existed here as to whether the claim was owed, Defendant is

entitled to summary judgment on Plaintiff's claim for the statutory bad faith penalty and attorney's fees.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

Manors of Innisbrook Condominium Association ("Manors") filed a claim with its insurer, Home-Owners Insurance Company ("Home-Owners"), for wind and hail damage to some of its buildings. Home-Owners denied coverage for the alleged hail damage. Manors brought this action, claiming Home-Owners breached its insurance contract with Manors by failing to replace the allegedly hail-damaged roofs. Manors also seeks to recover the statutory penalty and attorney fees provided by O.C.G.A. § 33-4-6 for bad faith refusal to pay

2

insurance claims. Home-Owners filed a motion for partial summary judgment (ECF No. 22) asserting that Manors's bad faith claim fails as a matter of law.

Viewed in the light most favorable to Manors, the record reveals the following facts. This action arises out of an insurance claim for alleged wind and hail damage to eight buildings within Manors's condominium community located at 4370 Turnberry Lane, Columbus, Georgia 31909. This property was insured by Home-Owners Policy No. 49-358853-00, which excludes from coverage losses caused by wear and tear, deterioration, or inadequate maintenance and repair. The policy term began on December 22, 2019. Mullins Aff. Ex. 1, Home-Owners Policy No. 49-358853-00 Declarations 1, ECF No. 22-2 at 14.

In July 2020, a roofing contractor named Andrew Barron was working on roofs damaged by a storm on a street near Manors's condominium complex. Borchert Dep. 50:8-21, ECF No. 30. He asked Robert Borchert, the president of Manors's board of directors, for permission to inspect Manors's roofs to determine if they had also been damaged. *Id.* Borchert gave him permission and Barron told Borchert that the Manors roofs were "badly damaged." *Id.* at 65:4. Based on this exchange, Borchert submitted a claim on behalf of Manors under its policy with Home-Owners for wind and hail damage to the property's roofing system.

On July 25, 2020, Home-Owners sent David Gibson, an independent insurance adjuster, to inspect the Manors roofs. Gibson inspected the roofs alongside Barron and another roofer. Following this inspection, Gibson concluded that the roof coverings did not sustain any hail damage and that the roofs' metal elements did sustain hail damage, but not during the policy period. Gibson identified wind damage to some shingles as well as some interior water damage and recommended those issues be covered. Gibson Dep. 98:18-24, ECF No. 31.  He estimated a replacement cost value of $6,861.35 for these repairs and Home-Owners issued payment to Manors consistent with this estimate, subtracting the policy's deductible.  Mullins Aff. ¶ 6, ECF No. 22-2 at 4.

Following the denial of Manors's claim for hail damage, Borchert informed a roofer and contractor named Dale McCain of the decision and allowed him to inspect the roofs.  McCain found that there was more hail damage than wind damage.  McCain Dep. 88:5-6, ECF No. 28.

Following his inspection, McCain asked Phillip Carter, another roofing contractor, to provide an estimate to repair the damage to the roofs.  Carter provided an estimate for the replacement of all the roofing systems.  Borchert Dep. 72:11-21. Carter's estimate totaled $585,953.15 but was later amended to $732,570.90.   At Home-Owners's request, Gibson prepared an alternate estimate to replace the roofs that totaled $266,586.80.

4

On August 20, 2021, Manors timely submitted a demand for payment in the amount of $629,565.00. Home-Owners rejected Manors's demand on September 1, 2021, on the grounds that any additional shingle damage beyond what Home-Owners provided payment for was excluded by the policy because it resulted from wear-and-tear and deterioration, and any damage to metal elements from hail occurred outside the policy period. Mullins Aff. ¶¶ 9-11.

## DISCUSSION

When an insurer refuses to pay a covered loss in bad faith, the insurer will be liable for, "in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer." O.C.G.A. § 33-4-6(a).[1] "The penalties contained in O.C.G.A. § 33-4-6 are the exclusive remedies for an insurer's bad faith refusal to pay insurance proceeds." *Howell v. S. Heritage Ins.*, 448 S.E.2d 275, 276 (Ga. Ct. App. 1994).

The summary judgment analysis for claims under O.C.G.A. § 33-4-6 is somewhat unique. "An insurer . . . having any reasonable factual . . . ground for contesting a claim is entitled to summary judgment under" O.C.G.A. § 33-4-6. *Amica Mut. Ins. v. Sanders*, 779 S.E.2d 459, 463 (Ga. Ct. App. 2015). Accordingly, "[p]enalties

---

[1] There is no dispute that Georgia law applies in this diversity action regarding an insurance policy for a Georgia property.

for bad faith are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact." *Fortson v. Cotton States Mut. Ins.*, 308 S.E.2d 382, 385 (Ga. Ct. App. 1983). "This rule applies even if genuine issues of fact exist with regard to whether the insurer's conduct in denying the claim, in part, may have been based upon bad faith." *Lee v. Mercury Ins. Co. of Ga.*, 808 S.E.2d 116, 133 (Ga. Ct. App. 2017). In other words, "it is the very fact that certain factual issues regarding the merits of a claim are in genuine conflict that causes there to be no conflict, as a matter of law, whether an insurance company had reasonable grounds to contest a particular claim." *Rice v. State Farm Fire & Cas. Co.*, 430 S.E.2d 75, 78 (Ga. Ct. App. 1993).

In *Montgomery v. Travelers Home and Marine Insurance*, the Georgia Court of Appeals explained that "[t]he advice of an independent consultant may provide an insurer with a reasonable ground to contest an insured's claim . . . entitling the insurer to summary judgment on a claim for bad faith penalties." 859 S.E.2d 130, 135 (Ga. Ct. App. 2021). It is reasonable as a matter of law "for an insurer to deny a claim based on such advice unless the advice is patently wrong and the error was timely brought to the insurer's attention . . . or unless the advice is" merely pretext for an insurer's prior decision to deny the claim. *Id.* (citation omitted). Advice is patently wrong if it is "obviously

6

or apparently wrong" and a factual dispute about whether the advice is wrong is insufficient to establish patent falsity. *Id.* at 136. In *Montgomery*, an insurer was entitled to summary judgment on whether it denied a claim in bad faith when it relied on an independent engineer's advice that ground water—not rainfall that would have been covered under the policy—caused damage to the insured's basement and there were genuine fact disputes on whether the advice was correct. *Id.* at 133-34.

Because Home-Owners relied on the advice of Gibson, an independent consultant, in denying Manors's claim, its denial was reasonable as a matter of law unless Manors can show that his advice was patently wrong or pretextual.

Manors argues that it was unreasonable for Home-Owners to rely on Gibson's opinion on the roof damage because Gibson was not a roofing contractor and has not worked for a roofing contractor. Gibson Dep. 15:8-12. But that does not mean he is unqualified to render an opinion, and it does not render his advice patently wrong. Gibson is a licensed insurance adjuster in Alabama and Georgia. *Id.* at 11:24-12:2. Gibson has investigated insurance claims as an adjuster since 2005. *Id.* at 8:12-14. He previously worked in construction and has taken a certification test for insurance adjusting that measures construction knowledge. *Id.* at 14:7-17, 15:2-7. While a jury may ultimately find Gibson to be mistaken on the question of what caused the roof damage, Manors

7

did not point to evidence that it was unreasonable for Home-Owners to rely on Gibson's advice just because he is not a roofing contractor.

Additionally, Gibson provided extensive reasoning for how he reached his conclusions. He indicated that the hail impacts on shingles leave rounded impact edges, but the allegedly hail-damaged shingles here had squared jagged edges. *Id.* at 70-71. This damage was more consistent, to Gibson, with granule loss and blistering that results from degradation and wear over time, and it led him to conclude that the roof coverings had not sustained hail damage. *Id.* at 55:2-24; Mullins Aff. ¶ 5. Gibson did conclude that the soft metal elements of the roofing system suffered hail damage, but he found that that the damage occurred outside the policy period. Mullins Aff. ¶¶ 5, 11. His reasoning was that when hail hits soft metals, it leave spatter marks for well over a year typically, and the damage to the soft metals here lacked any spatter marks. Gibson Dep. 106:8-17, 114:15-19, 116:15-21. Ultimately, a jury may believe the assessment of Manors's contractor that there was recent hail damage to the roofs and discredit Gibson's assessment that there was not. But this factual dispute over whether Gibson's advice was correct does not render it patently wrong such that it did not provide a reasonable ground to deny the claim.

Although Manors did not argue that Gibson's advice was pretext for a foregone conclusion to deny coverage, Manors does assert that Home-Owners ignored evidence that supported the existence of covered hail damage, such that its denial was in bad faith.  One piece of evidence that Manors considers ignored was a benchmark hail history report that found there was a 50 percent chance that hail events occurred within 5 miles of the property on April 12, 2020 and at the property on April 19, 2020.  Pl.'s Resp. to Def.'s Mot. Partial Summ. J. Ex. B, Benchmark Hail History Report 2, ECF No. 33-2.  Despite its availability to Manors, Gibson did not consider this hail report in his evaluation.

But, Gibson stated that these reports are not helpful for determining if hail damage is present; they merely help date hail damage if it is found to be present during a physical inspection.  Gibson Dep. 126:1-18.  Gibson determined based on his inspection that there was not hail damage to the roof coverings.  *Id.* at 130:15-19.  So there is evidence that Gibson declined to consider a report that he would not find relevant in these circumstances, rather than just ignoring a report that was inconvenient to Home-Owners.  This factual dispute over the efficacy of the report does not indicate that Gibson's failure to use it rendered his advice mere pretext such that it cannot provide a reasonable ground to deny Manors's claim.

Manors also claims that Home-Owners ignored a policy renewal inspection report from October 29, 2019 that does not indicate the presence of hail damage to the roof. Pl.'s Resp. to Def.'s Mot. Partial Summ. J. Ex. A, Policy Renewal Inspection Report 2, ECF No. 33-1. Manors argues that because this report indicated no hail damage to the roof, and hail damage was found on the roof soft metals by Gibson in July 2020, hail must have damaged these metal elements after this report and therefore within the policy period. But the report is unclear as to whether it was assessing hail damage to the metal elements of the roof or just the roof coverings (i.e., the shingles). The report seems to largely assess the condition of only roof coverings, rather than metal elements, as it lists the only roofing materials as asphalt, architectural/composition, and shingles, with no mention of any metal elements. *Id.* The report could be consistent with Home-Owners's position that there was no hail damage to the roof coverings. Accordingly, this report is not clear enough to suggest that Gibson's advice was pretextual or that Home-Owners's denial of Manors's claim was in bad faith.

Manors also claims Home-Owners ignored evidence and acted in bad faith by failing to interview its roofing contractor, McCain. But Home-Owners did not ignore McCain; it considered his assessment of the damage but deemed it unreliable because his conclusions lacked supporting evidence. Mullins Aff. ¶ 7. It is true that

10

Home-Owners did not interview him, despite his claim to be an eyewitness that there was no hail damage on the roofs as recently as April 2020. McCain Dep. 112:10-113:4. But this testimony would only corroborate Manors's version of events, which is insufficient to show a bad faith failure to investigate. *See Progressive Cas. Ins. v. Avery*, 302 S.E.2d 605, 607 (Ga. Ct. App. 1983). In *Avery,* an insurer denied coverage because its experts concluded the fire that was the subject of the claim was arson. *Id.* at 606. The insurer had written incident reports from a police officer and fire chief who witnessed the fire, but the insurer did not interview them or other eyewitnesses. *Id.* Because these witnesses would have given testimony that corroborated the insured's version of events, the insured asserted that the insurer did not conduct a reasonable investigation and therefore denied his claim in bad faith. *Id.* at 606–07. The court found that because this testimony was merely corroborative of the insured's version of events, it was relevant to the question of the insurer's ultimate liability but did not demonstrate that the insurer acted in bad faith. *Id.* at 607.

By contrast, in *United Services Automobile Ass'n v. Carroll*, an insurer denied coverage based solely on the statement of the insured which seemed to exclude coverage, and it did no further investigation to clarify the facts as stated by the insured. 486 S.E.2d 613, 616 (Ga. Ct. App. 1997). This constituted sufficient

11

evidence of bad faith to go to the jury. *Id.* The facts here are closer to those in *Avery*, as Home-Owners did investigate the claim; it merely declined to interview a corroborative witness from whom it already had evidence. Accordingly, Home-Owners declining to interview McCain does not mean their denial was in bad faith.

Because the Court finds that Home-Owners had a reasonable ground, as a matter of law, to deny Manors's claim based on Gibson's recommendation, the Court declines to consider Home-Owners's alternative argument that it had reasonable grounds to deny the bad faith demand based on its issues with Carter's repair estimate.

## CONCLUSION

For the reasons set forth above, Home-Owners's motion for partial summary judgment (ECF No. 22) is granted.

IT IS SO ORDERED, this 11th day of December, 2023.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA